Filed 5/7/14  In re Elmer A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re ELMER A., a Person Coming Under the Juvenile Court Law. | D064536 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J232555) |
| v. | |
| ELMER A., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis, III, Judge.  Reversed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

On December 10, 2013, the District Attorney for the County of San Diego filed a wardship petition under Welfare and Institutions Code section 602 charging Elmer A., a minor, with possession of brass knuckles (count 1; Pen. Code, § 21710), possession of smoking paraphernalia (counts 2 & 4; Pen. Code, § 308, subd. (b)), and possession of marijuana (count 3, Health & Saf. Code, § 11357, subd. (b)).

On April 9, 2013, the court denied Elmer's motion to suppress evidence (Welf. & Inst. Code, § 701.1). Elmer then admitted to possessing brass knuckles (Pen. Code, § 21710) and the remaining three counts were dismissed in the interest of justice. The parties agreed Elmer would be placed on probation and the petition would be dismissed after successful completion of probation with no violations.

Elmer appeals the trial court's denial of his motion to suppress evidence under Welfare and Institutions Code section 700.1. He contends the 911 call did not provide reasonable suspicion to detain him and therefore, the evidence obtained from the unlawful detention should be excluded. We reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2012, at 4:24 p.m., San Diego Deputy Sheriff Ricardo Carlon received a dispatch based on a 911 call to investigate suspected drug activity behind an apartment complex. The caller stated that Hispanic adult males were selling narcotics out of a red SUV with chrome rims parked in a lot behind the apartment complex, and further stated that one of the males lived in "apartment 61" in the complex.

At 4:42 p.m.--approximately 18 minutes after receiving the call from dispatch-- Deputy Carlon and two other deputies arrived at the apartment complex. Carlon walked

2

toward a grassy area located at the far end of the complex, gated and accessible only on foot. He was familiar with this area as a popular location for local street gang members to conduct drug activity.

When Carlon entered the gate, he saw Elmer and another young Hispanic male standing next to a bicycle approximately 10 to 15 yards away from him. Carlon approached them and "advise[d] [them] to have a seat."[1] The other Hispanic male immediately took a seat on the grass. Elmer began digging into his pocket, and continued to do so although Carlon instructed Elmer to take his hand out of his pocket. Believing Elmer had a weapon in his pocket, Carlon withdrew his gun and pointed it at Elmer. Elmer immediately took his hand out of his pocket and threw "a dark object" on the ground. Carlon instructed Elmer to lie on the ground and called for additional police assistance. Upon learning the dark object Elmer removed from his pocket was a pair of plastic brass knuckles with a blade attached, police handcuffed and arrested him. A search incident to arrest revealed the brass knuckles, two lighters, two cell phones, and a pipe for smoking marijuana.

## DISCUSSION

Elmer contends Carlon's search was unconstitutional under the Fourth Amendment because he did not have a reasonable suspicion to believe Elmer and his friend were

---

[1] Deputy Carlon testified that, at this point, they were not free to leave and if they tried to walk away, he "would have detained them." The trial court found Elmer was detained at the time he was approached by Carlon and advised to sit down. Even though Elmer did not follow Carlon's directions, the People have not argued there was no detention of Elmer at that time.

3

selling drugs or engaged in any other criminal activity and were therefore unlawfully detained. (See *In re William G.* (1985) 40 Cal.3d 550, 567.) Elmer contends the juvenile court erred by denying his Welfare and Institutions Code section 700.1 motion to suppress evidence obtained from the unlawful detention.

When reviewing a ruling on a motion to suppress evidence, we defer to the trial court's factual findings when supported by substantial evidence. (*People v. Camacho* (2000) 23 Cal.4th 824, 830.) We then exercise our independent judgment to determine whether, on the facts found by the court, the search was reasonable under the Fourth Amendment. (*Ibid.*)

*Reasonable Suspicion*

The People contend Carlon's detention of Elmer and his friend was reasonable based on several articulable facts: (1) they were located in the "precise" area in which the drug activity was reported; (2) they were in that location fewer than 20 minutes after the drug activity was reported; (3) they matched the caller's description of the suspects as Hispanic males; and (4) they were the only individuals Carlon saw at the location. The People contend, under the totality of these circumstances, Carlon had reasonable suspicion to detain Elmer and his friend and to conduct the search.

The Fourth Amendment prohibits unreasonable detentions of persons by law enforcement. (*Terry v. Ohio* (1968) 392 U.S. 1, 19; *People v. Celis* (2004) 33 Cal.4th 667, 673.) Generally, a person is detained when the conduct of a law enforcement officer, whether by means of physical force or show of authority, makes a *reasonable person* feel as though he or she is not free to leave. (*People v. Rios* (2011) 193

4

Cal.App.4th 584, 592.) However, a detention is reasonable under the Fourth Amendment when the detaining officer has specific articulable facts that, considering the totality of the circumstances, reasonably justify an objective conclusion the person detained may be involved in criminal activity. (*People v. Souza* (1994) 9 Cal.4th 224, 231.) The specific and articulable facts must cause a *reasonable* police officer in a like position, drawing on his or her training and experience, to believe activity relating to crime has taken place, is occurring or is about to occur, and the person he or she intends to detain is involved in that activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 893.)

In *People v. Dolly* (2007) 40 Cal.4th 458 (*Dolly*), an unidentified man placed a 911 call to report an assault with a firearm, and specifically described the perpetrator, the car he was parked in, and the location of the car. (*Id.* at p. 462.) When police arrived at the location two minutes later, they found a car that matched the description provided to radio dispatch with a man who matched the description sitting in the passenger seat. (*Ibid.*) After ordering the suspect to get out of the car and lie down on the street, the Police searched the vehicle and found a loaded firearm under the front passenger seat. (*Ibid.*) The court in *Dolly* held that, under the totality of the circumstances, the 911 call supplied reasonable suspicion to detain the suspect, in part because the caller provided a "firsthand, contemporaneous description of the crime as well as an accurate and complete description of the perpetrator and his location, the details of which were confirmed within minutes by the police when they arrived." (*Id.* at p. 468.)

Here, nothing in the record indicates Deputy Carlon was able to corroborate *any* of the tipster's information provided in the 911 call. Similar to *Dolly*, the caller provided a

5

detailed description about the circumstances, including the suspect's address in the complex, that the suspect was selling drugs while sitting in a red SUV with chrome wheels parked in the back parking lot of the complex, and that the suspect was an adult Hispanic male. However, unlike *Dolly*, Carlon did not observe a red SUV or any adult Hispanic males in the parking lot behind the complex. Instead, he only found two "young" Hispanic boys standing in the grass field behind the complex--an area inaccessible to vehicles--next to a bicycle. Further, the record does not reflect any attempt by Carlon to search for the suspect at the apartment number provided by the caller.

The evidence relating to frequent gang activity in the grass field did not give rise to a reasonable suspicion Elmer was then engaged in criminal activity. Although Carlon testified that the grass field is "a chronic area where a lot of local street gang members hang out," there was no evidence that by standing in the field, Elmer was likely to be participating in criminal activity. Further, Carlon testified he saw no signs Elmer and his friend were conducting any drug transactions or other criminal activity when he approached and detained them.[2]

The People cite *People v. Conway* (1994) 25 Cal.App.4th 385, 389-390 and *People v. Lloyd* (1992) 4 Cal.App.4th 724, 733-734 to support the contention that the absence of other potential perpetrators in the area support a finding of reasonable suspicion to detain Elmer. However, the People's reliance on these cases is not

---

[2]     Carlon testified he approached the two minors to look for "signs of activity, sales, packages" or other drug activity, but found none.

persuasive because they do not consider the "totality of the circumstances" in each case. In both cases, the court considered multiple factors, including the time of day each suspect was found leaving the crime scene, the suspect's behavior, and the absence of anyone else in the area, to support a reasonable inference of criminal activity (3:00 a.m. and 4:00 a.m., respectively). (*Conway*, at p. 390; *Lloyd*, at pp. 733-734.) Here, Elmer and his friend were standing in a grassy field with a bicycle, in broad daylight at 4:52 p.m., exhibiting no suspicious behavior or signs to indicate involvement in any drug activity. Under the totality of the circumstances, a reasonable police officer in a like position would not suspect Elmer and his friend had been involved in the drug activity reported in the 911 call. (See *In re Tony C.*, *supra*, 21 Cal.3d at p. 893.)

None of this evidence, considered either individually or cumulatively, supports a reasonable suspicion to detain Elmer. At best, Carlon used a broad profile--Hispanic males standing in a nearby field known for frequent gang activity--to speculate Elmer and his friend were involved in the drug activity reported in the 911 call. However, without more corroborative evidence, the fact that Elmer and another Hispanic male were standing within the vicinity of the crime--a "high crime" area frequented by gang members--is not sufficient grounds alone to detain him. (*Florida v. J.L.* (2000) 529 U.S. 266, 270-272; *People v. Hester* (2004) 119 Cal.App.4th 376, 388–391.)

We conclude Deputy Carlon's detention of Elmer when he ordered him to sit down was a violation of the Fourth Amendment because Carlon did not have reasonable suspicion to believe Elmer was then involved in the drug activity reported in the 911 call or any other criminal activity. Accordingly, the court erred by not granting the motion to

7

suppress the evidence of possession of brass knuckles, and the judgment of conviction of that offense must therefore be reversed.

## DISPOSITION

The judgment is reversed.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

8